UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>SHAUN MEYER,<br><br>　　　　　Defendant. | CR. 15-50055-JLV<br><br><br>ORDER |

# INTRODUCTION

Defendant Shaun Meyer, appearing *pro se*, filed a motion for compassionate release. (Docket 49). Pursuant to the Amended Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota, and Mr. Meyer filed records, submissions and briefing on his motion. (Dockets 50, 53-54, 56, 60, 61-62, & 64). On November 20, 2020, Mr. Meyer filed a motion to compel a decision from the court. (Docket 63). Mr. Meyer subsequently filed a motion to add new information to the record. (Dockets 66-68). For the reasons stated below, defendant's motion for compassionate release is denied.

# AMENDED STANDING ORDER 20-06

Amended Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions

---

[1]See https://www.sdd.uscourts.gov/socraa.

under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). By the amended standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. ¶ 4. Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

### MR. MEYER'S CLASSIFICATION

On June 15, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Meyer as a Low Priority case. (Docket 50).

### FACTUAL BACKGROUND

Mr. Meyer pleaded guilty to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (Dockets 29 & 32). Based on a presentence

investigation report, Mr. Meyer's advisory guideline range was 100 to 125 months of imprisonment based on a total offense level of 25 and his criminal history category V.  (Docket 39 ¶¶ 29, 43 & 76-77).  Several aggravating specific offense characteristics increased Mr. Meyer's offense level including possessing material that involved prepubescent minors, material that portrayed sadistic or masochistic conduct and material that involved at least ten but less than 150 images.  Id. ¶¶ 18-21.  The offense carried a mandatory minimum term of imprisonment of 120 months because Mr. Meyer had a prior conviction involving possession of child pornography.  Id. ¶¶ 76 & 78.  On January 25, 2016, the court sentenced Mr. Meyer to a term of imprisonment of 120 months followed by 20 years of supervised release.  (Dockets 43 & 44 at pp. 2-3).

Mr. Meyer is currently an inmate at FMC Rochester, an administrative security medical facility, in Rochester, Minnesota.  Fed. Bureau Prisons, https://www. bop.gov/inmateloc/ (last checked Apr. 23, 2021).  The total inmate population at FMC Rochester is currently 644 persons.  https://www. bop.gov.locations/institutions/rch/ (last checked Apr. 23, 2021).  As of April 23, 2021, there are no active COVID-19 cases among inmates and staff. https:www.bop.gov/coronavirus/ (last checked Apr. 23, 2021).  There have been no deaths as a result of COVID-19, and 368 inmates and 58 staff have recovered from COVID-19 at FMC Rochester.  Id.  These statistics demonstrate that COVID-19 was widespread at FMC Rochester but presently under control.

3

Mr. Meyer has a scheduled release date of October 24, 2023. (Docket 53 at p. 474). Mr. Meyer served over 65 percent of his statutory term, and under his current status in the Bureau of Prisons ("BOP"), Mr. Meyer's home detention eligibility date is April 24, 2023. Id. at pp. 474-75. Mr. Meyer is 44 years old. Id. at p. 473.

## MR. MEYER'S MOTION

Mr. Meyer's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling circumstances in light of his confinement during the COVID-19 pandemic. (Docket 49 at p. 1). Mr. Meyer states he obtained "specialized employment skills and certifications" while in custody that warrant compassionate release. Id. Mr. Meyer requests his remaining time in custody be converted to additional supervised release time and submits a detailed five-year release plan with his motion. Id. at pp. 2-3. On June 16, 2020, the FPD docketed a notice of intent not to supplement Mr. Meyer's *pro se* motion.

Mr. Meyer supplemented his motion with additional information. (Dockets 56 & 57). Mr. Meyer asserts he falls in the obese category because he weighs 231 pounds and is 6'2" tall and provides updated information relevant to his release plan. (Docket 57 at p. 1). In another supplement, Mr. Meyers asserts he was diagnosed with pernicious anemia on November 5, 2020, which he claims increases his risk from COVID-19. (Docket 64 at pp. 1-2). He was prescribed vitamin B12 tablets but later he was switched to vitamin B12 injections. (Docket 66 at p. 2). In a third update, Mr. Meyer

4

states he contracted COVID-19, which progressed to pneumonia; however, he reported being nearly recovered and was taking the last of his medications at the time.  (Docket 67 at p. 1).

Mr. Meyer's medical records confirm the following medical conditions:[2]

- Polyneuropathy.  (Docket 53 at p. 1);
- Myopia.  Id.;
- Phlebitis and thrombophlebitis.[3]  Id.;
- Foot drop.  Id.; and
- Rash.  Id.

Mr. Meyer takes ibuprofen as needed for phlebitis and thrombophlebitis. Id. at p. 427.  He uses ankle braces and orthotic shoes for foot drop.  Id. at pp. 257 & 286.  Based on his height of 74 inches and weight of 231 pounds Mr. Meyer has a body mass index (BMI) of 29.7, which is overweight but not obese.  See Adult BMI Calculator, Centers for Disease Control & Prevention ("CDC") https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/ english_bmi_calculator/bmi_calculator.html (last checked Feb. 16, 2021).

On February 5, 2021, Mr. Meyer filed another supplement to his motion together with an attachment of several new articles about the status of COVID-

---

[2]Mr. Meyer's medical information was filed with the court on June 19, 2020, and has not been updated since that time except through Mr. Meyer's written submissions to the court.  (See Docket 53).

[3]Phlebitis refers to inflammation of a vein, while thrombophlebitis is due to one or more blood clots in a vein that cause inflammation.  See Mayo Clinic, https://www.mayoclinic.org/diseases-conditions. (last checked Feb. 16, 2021).

5

19 in the BOP. (Dockets 68 & 68-1). The findings in those articles are consistent with the court's conclusions regarding COVID-19 and the BOP's response.

## UNITED STATES' OPPOSITION

The government opposes Mr. Meyer's motion for compassionate release. (Dockets 54 & 60). First, the government argues Mr. Meyer's medical conditions do not rise to the level of serious physical and medical conditions contemplated by U.S.S.G. § 1B1.13 to warrant compassionate release. (Docket 54 at pp. 4-6). Second, the government argues Mr. Meyer's conditions are not on the list of conditions increasing or potentially increasing the risk from COVID-19 as identified by the CDC. Id. at pp. 5 & 8. Third, because Mr. Meyer's conditions are manageable while in custody, the government urges the court to deny his motion. Id. at 8. Next, the government generally asserts "[t]he existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself . . . provide a basis for a sentence reduction." Id. at p. 6. In response to Mr. Meyer's additional information, the government asserts the evidence is insufficient to establish Mr. Meyer qualifies as obese and, regardless, his weight does not rise to a serious medical condition. (Docket 60 at pp. 1 & 3).

Finally, the government argues the 18 U.S.C. § 3553(a) factors weigh against granting compassionate release to Mr. Meyer. (Docket 54 at pp. 10-11). The government contends Mr. Meyer is a danger to the public and

6

reminds the court of defendant's history of three prior child pornography convictions and two convictions for failing to register as a sex offender.  Id. at p. 1.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.  18 U.S.C. § 3582(c)(1)(A)(i).  The government does not argue Mr. Meyer failed to exhaust his administrative remedies.  (Docket 54 at p. 2).  Accordingly, the court will address the merits of Mr. Meyer's request.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release."  United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020).  That task was left to the United States Sentencing Commission.  See 28 U.S.C. § 994(t).  Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  See id.  Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and

compelling.  U.S.S.G. § 1B1.13 comment. n.1.  The four categories have not been updated since December 2018 when the First Step Act became law.[4]

The court previously surveyed the status of the law as to a court's authority under the First Step Act.  E.g., United States v. Thunder Hawk, CR. 14-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109, at *4-5 (D.S.D. Dec. 11, 2020); and United States v. King, CR. 15-50050, 2020 WL 6146446, at *4-5 (D.S.D. Oct. 20, 2020).  A summary of that survey is sufficient here.

This court has held it retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release."[5]  E.g., Magnuson, 2020 WL 7318109, at *5   (quoting United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020)); see also McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13

---

[4]The United States Sentencing Commission lacks a quorum and currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]."  United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

[5]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declined to do so.  United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).

8

in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.  Despite the expanded authority under the First Step Act, the court finds Mr. Meyer has not met his burden of proof by presenting "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

Mr. Meyer relies on his rehabilitation and training in custody and his medical conditions and incarceration during the COVID-19 pandemic as extraordinary and compelling reasons warranting compassionate release.  See generally Dockets 49, 56, 61, 62, 64 & 66-68.  Mr. Meyer is 44 years old.

Adults of any age are at increased risk of severe illness from COVID-19 if they have certain conditions.  Recently, the CDC updated its understanding of

9

the health conditions increasing the risk from COVID-19.  See People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Mar. 29, 2021).  The CDC now states individuals with the following conditions *can* be more likely to become severely ill from COVID-19: cancer, chronic kidney disease at any stage, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease ("COPD"), cystic fibrosis and pulmonary hypertension), dementia or other neurological conditions, diabetes (type 1 or type 2), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies or hypertension), HIV infection, immunocompromised state, liver disease, overweight and obesity, being a current or former smoker, history of stroke or cerebrovascular disease, substance abuse disorders and several others.  Id.  The CDC's guidance to clinicians explains: "[t]he risk of severe COVID-19 increases as the number of underlying medical conditions increases in an individual."  https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated Mar. 29, 2021).

     Mr. Meyer's medical conditions do not make the CDC's list for those causing serious illness from COVID-19.

     Mr. Meyer argues compassionate release is warranted because of his extensive training, apprenticeships and classes while in custody.  To Mr. Meyer's credit, he has been active and productive while incarcerated.  See

Docket 53 at pp. 471-72. The training, classes and programs may benefit Mr. Meyer when his period of incarceration ends; however, the law is clear that rehabilitation alone is not an extraordinary and compelling reason. 28 U.S.C. § 994(t). Nor does the court find his rehabilitation in conjunction with other factors, including his medical conditions and COVID-19 diagnosis, persuasive. Mr. Meyer has not met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

The court also recognizes the BOP's recent implementation of a COVID-19 vaccination program. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last checked Apr. 21, 2021). As of April 21, 2021, 137,845 doses have been administered systemwide, and the number continues to rise. Id. At FMC Rochester, 311 staff and 286 inmates were fully inoculated as of April 23, 2021. Id. According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

Id.

### 3553(a) Factors

The court concludes the § 3553(a) factors do not support relief. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the

11

offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others.  18 U.S.C. § 3553(a)(1)-(7).  A detailed analysis of these factors is unnecessary.

Mr. Meyer's offense of possession of child pornography was serious in nature.  See Docket 39 ¶¶ 17-21.  Several upward adjustments to his guideline range were warranted based on the especially disturbing nature of the images and their numerosity.  Id.  This was not Mr. Meyer's first such offense and, in fact, he had three prior convictions for similar conduct.  Id. ¶¶ 37-39.  Mr. Meyer was also twice convicted for failing to register as a sex offender.  Id. ¶¶ 40-41.  The instant offense occurred while Mr. Meyer was under supervised release for failure to register.  Id. ¶ 42.  The court sentenced Mr. Meyer to the mandatory minimum sentence.  Upon review of the § 3553(a) factors, the court concludes Mr. Meyer's current sentence is appropriate to reflect the seriousness of his offense, provide appropriate punishment and protect the public from further offenses by the defendant.

## ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 49) is denied.

IT IS FURTHER ORDERED the motion to compel the court's order (Docket 63) is denied as moot.

IT IS FURTHER ORDERED the motion to add new information (Docket 66) is granted.

Dated April 26, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE