UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br> vs.<br><br>SHAUN MEYER,<br><br>      Defendant. | CR. 15-50055-JLV<br><br><br>ORDER |

**INTRODUCTION**

  Defendant Shaun Meyer filed a motion for compassionate release. (Docket 73).  Pursuant to Standing Order 32-02, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Meyer's motion.  (Dockets 75, 80 & 82).  For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 23-02**

  Standing Order 23-02,[1] captioned "Revising the Procedure for Compassionate Release Motions Under the First Step Act," "revis[ed] the procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)."  (SO 32-02).  Under the

---

  [1]See https://www.sdd.uscourts.gov/content/standing-order-23-02-revising-procedure-compassionate-release-motions-under-first-step-act ("SO 32-02").

order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act.  If the FPD believes itself to have a conflict of interest or other inability to represent a person who qualifies under (a) and (b) above, the FPD shall notify the magistrate judge in the division where the case is pending so that the magistrate judge may consider the appointment of a CJA panel attorney." Id. at ¶ 1.

## FACTUAL BACKGROUND

Mr. Meyer pled guilty to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  (Docket 34).  Mr. Meyer's advisory guideline range was 100 to 125 months of imprisonment based on a total offense level of 25 and his criminal history category V.  (Docket 39 at ¶¶ 29, 43 & 77).  Several aggravating specific offense characteristics increased Mr. Meyer's offense level including possessing material that involved prepubescent minors, portrayed sadistic or masochistic conduct and involved at least ten but less than 150 images.  Id. at ¶¶ 18-21.  The offense carried a mandatory minimum term of imprisonment of 120 months because Mr. Meyer had a prior conviction involving possession of child pornography.  Id. at ¶¶ 76 & 78.  On January 25, 2016, the court sentenced Mr. Meyer to a term of imprisonment of 120 months followed by 20 years of supervised release.  (Dockets 43 & 44).

Mr. Meyer is currently an inmate at RRM Minneapolis, a Residential Reentry Management (RRM) field office in Minneapolis, Minnesota.  See Fed.

Bureau Prisons, https://www. bop.gov/inmateloc/ (last checked Apr. 9, 2023). Mr. Meyer has a scheduled release date of October 24, 2023. Id.

Mr. Meyer previously sought compassionate release, citing obesity, anemia, deficiency, pneumonia and other medical conditions, as well as citing the employment skills he had developed. (Docket 49). The Court denied his motion, concluding his rehabilitation and medical conditions did not meet his burden to establish that compassionate release is warranted. (Docket 69).

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v.

3

Jones, 836 F.3d 896, 899 (8th Cir. 2016).  The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion.  United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t).  Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples.  Id.  Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances.  Id.  There is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not been updated since December 2018 when FSA became law.[2]

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies.  See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence

---

[2]Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

4

pursuant to the First Step Act"). The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the Bureau of Prisons ("BOP") before the passage of the First Step Act. It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On January 7, 2022, Mr. Meyer submitted a request for compassionate release to the Warden of FMC Rochester. (Docket 73-1 at p. 1). Mr. Meyer stated he is "requesting that [his] file now be reconsidered for compassionate release due to the fact that just recently [his] B12 Deficiency has become worse[.]" Id. Mr. Meyer stated, "the facility has not responded back," but 30 days have passed since it was filed. (Docket 73 at p. 1). Mr. Meyer satisfied his exhaustion requirement.

### B. Defendant's Motion for Compassionate Release

Mr. Meyer seeks compassionate release due to his medical issues, coupled with the COVID-19 pandemic and need to care for his "9 year old son who is Autistic." (Docket 73 at pp. 1-2; Docket 79 at p. 1).

5

In Mr. Meyer's first motion, he relied on his rehabilitation and training in custody and his medical conditions and incarceration during the COVID-19 pandemic as extraordinary and compelling reasons warranting compassionate release.  See generally Dockets 49, 56, 61, 62, 64, 66, 67 & 68.  The court denied relief as it did not find that Mr. Meyer's medical conditions nor his claim for rehabilitation justified compassionate release.  (Docket 69).

In this motion, Mr. Meyer stated "due to the Defendant catching COVID-19 in late 2020/2021, his medical issues have now become a little more serious.  As stated before, the Defendant has the following medical issues: Vitamin B12 Deficiency, Anemia, Polyneuropathy, Myopia, Phlebitis and Thrombophlebitis, Umbilical Hernia, neuropathy, and fatigue.  The Defendant now has a BMI of 32.1 which is considered obese."  (Docket 73 at pp. 1-2, 3-4).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions.  See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (Feb. 10, 2023) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  The Centers for Disease Control and Prevention ("CDC") identifies the following conditions as posing an increased risk of severe illness from COVID-19, including cancer, chronic kidney disease, chronic obstructive pulmonary disease, heart conditions, obesity (BMI of 30 or higher) and type 2 diabetes.  Id.

Mr. Meyer's medical records list his health problems as unspecified disease of hair and hair follicles, Vitamin B12 deficiency anemia, unspecified polyneuropathy, phlebitis and thrombophlebitis, dental caries, partial loss of

teeth, a disorder of teeth and supporting structures, an umbilical hernia, foot drop and foot pain, a rash, obesity and a nonspecific skin eruption. (Docket 75 at pp. 22-23, 108-09). Mr. Meyer had an asymptomatic form of COVID-19 in January of 2021 and is fully vaccinated. Id. at pp. 75, 127 & 118.

Obesity is Mr. Meyer's only condition that puts him in a category of people for which COVID-19 appears to pose a particular risk, as his BMI was 30.9. (Docket 75 at p. 77). Obesity is a condition that poses an increased risk of severe illness from COVID-19. Several courts, including courts in the District of South Dakota, have concluded that obesity on its own during the COVID-19 pandemic does not necessarily warrant a reduction in sentence for extraordinary and compelling reasons. See United States v. McAbee, No. 4:14-CR-40027-01, 2020 WL 5231439, at *3 (D.S.D. Sep. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); United States v. Saenz, No. 3:10-CR-30027-01, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons).

Mr. Meyer's Anemia and Vitamin B12 Deficiency appear to be properly managed and he appears to be receiving proper care while incarcerated. (Docket 75 at pp. 39, 42, 45, 57 & 64); see United States v. Gould, 4:19-CR-40017-01, 2021 WL 872694, *4 (D.S.D. Aug. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

7

Mr. Meyer is 46 years of age.  See Federal Bureau of Prisons' Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Apr. 13, 2023).  CDC guidance lists people who are over the age of 65 at high risk of getting very sick from COVID-19.  See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlying conditions.html (updated Feb. 9, 2023).  He is not in the high-risk age group.

Against Mr. Meyer's medical conditions, the court must weigh the steps the BOP has undertaken to manage the spread of COVID-19 within its facilities and to treat inmates who become infected.  The BOP made significant changes to correctional operations since the pandemic started in early 2020.  See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 6, 2023).  These include sanitary and safety measures, restrictions on movement and visitation restrictions.  Id.

RRM Minneapolis is a residential reentry management field office.  It has 7,327 inmates at its residential reentry centers.  See Fed. Bureau of Prisons RRM Minneapolis, https://www.bop.gov/locations/institutions/eng/ (last visited Mar. 9, 2023).  The court is unable to find COVID-19 related statistics for this location.  See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 6, 2023).

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic.  The BOP has implemented a COVID-19 vaccination plan to protect

inmates and staff and limit the transmission of COVID-19 within the facilities. Mr. Meyer has been fully vaccinated.  (Docket 75 at p. 118).

Based on the court's close review of the medical records, the court disagrees with Mr. Meyer's contention that "[t]he conditions of confinement make it difficult to provide adequate self-care." (Docket 79 at p. 10).  Although not unsympathetic, the court finds Mr. Meyer's age and health conditions do not prevent him from providing self-care in a correctional facility setting and he appears to be receiving proper care for his ailments while incarcerated.  The court does not find Mr. Meyer's medical conditions to be an extraordinary or compelling circumstance that justifies compassionate release.

A generalized fear of COVID-19 cannot be a basis to grant compassionate release.  United States v. Gater, 857 F. Appx. 259 (8th Cir. 2021) (quoting United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release") (quoting United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021) (noting "[f]ear of COVID doesn't automatically entitle a prisoner to release" and affirming denial of compassionate release request to a defendant with two, well-controlled, chronic medical conditions)).

Mr. Meyer's second argument for compassionate release is to provide care for his son.  (Docket 73 at p. 5).  Mr. Meyer states he

> found out that the mother of his son 'no longer wants him living in her home . . .' They have discussed with his doctor Margaret Kuehler from the Black Hills Pediatrics, LLP.  In her clinical notes, she notes that 'he is Autistic and has seen multiple psychiatrists and they have even tried to move him to Washington to a residential treatment

9

> center but was un-successful.' She also states 'We discussed that to me this sounded like she wanted to put him in foster care and she said if thats what was necessary she would consider it. We also talked about the children's home and she thought that might be a good fit.' To bring the point accross, the Defendant is also submitting a referal for his son to go to the children's home society for placement.

Id. at pp. 4-5 (internal citations omitted). Mr. Meyer states his parents live in Florida, which leaves him to take care for his child. (Docket 73 at p. 5).

In November 2021, medical records confirm the child's "Mother is very frustrated and no longer wants [the child] living in her home - she says he licks her which she cannot stand." (Docket 73-1 at p. 16). The child's mother "mention[ed] that she knows other people who have had to have their children live with other people because they could not handle them and she feels she cannot handle him." (Docket 73 at p. 18). She stated she would consider foster care and thought children's home "might be a good fit." Id.

An order to show cause hearing was conducted on March 29, 2022, in Pennington County. (Docket 82). During that hearing, the child's mother did not indicate she was no longer able or willing to take care of the child. In fact, she stated, "she calls him [her] son because [she] pays for everything." Id. at p. 14. The evidence presentenced rebutted Mr. Meyer's contention that the child is without a caretaker. Mr. Meyer's family situation does not justify compassionate release.

### C. 3553(a) Factors

The 18 U.S.C. § 3553(a) sentencing factors further show compassionate release is not warranted. The factors are:

10

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed—

   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b. to afford adequate deterrence to criminal conduct;

   c. to protect the public from further crimes of the defendant and

   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

Mr. Meyer's offense of possession of child pornography was serious in nature. See Docket 39. Several upward adjustments to his guideline range were warranted based on the especially disturbing nature of the images and their numerosity. Id. at ¶¶ 17-21. This was not Mr. Meyer's first such offense; he had three prior convictions for similar conduct. Id. at ¶¶ 37-39. Mr. Meyer has six prior felonies. Id. at ¶¶ 35-41. His first two felony convictions, though for theft, both involved Mr. Meyer accessing or possessing child pornography. Id. at ¶¶ 35-36. His next two felonies involved encouraging child sexual abuse. Id. at ¶¶ 37-38. Mr. Meyer's conduct in those convictions again involved him viewing child pornography. In all four convictions, he was caught viewing or possessing child pornography by a spouse or other individual. Id. at ¶¶ 35-38. The fourth conviction involved Mr. Meyer violating his probation by having contact with two minors and possessing child pornography. Id. at ¶ 38. His fifth felony was for possession of child pornography. Id. at ¶ 39. His final felony was for failing to register as a sex offender, which followed a prior

11

misdemeanor conviction for failing to register.  Id. at ¶¶ 40-41.  The instant offense occurred while Mr. Meyer was under supervised release for failure to register.  Id. at ¶ 42.

Mr. Meyer has had two instances of misconduct while incarcerated. (Docket 80 at p. 35).  On January 28, 2014, staff found a cellphone and nude photos of himself within his coat; staff also found Mr. Meyer had used Craigslist to correspond with minors outside the country.  Id.  On October 28, 2021, Mr. Meyer admitted to possessing an unauthorized item.  Id.

Considering the § 3553(a) factors, no basis exists for release.  The court concludes Mr. Meyer's sentence is appropriate to reflect the seriousness of his offense, provide appropriate punishment and protect the public from further offenses by the defendant.

## ORDER

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket 73) is denied.

Dated May 26, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE